UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FREDDIE HALL #600792,

    Plaintiff,

v.

DANIEL COLE, et al.,

    Defendants.

_____/

Case No. 2:23-cv-28

Hon. Hala Y. Jarbou
Chief U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendant Daniel Cole's motion for summary judgment due to Plaintiff's failure to exhaust administrative remedies. (ECF No. 23.) Hall filed a response to Defendant Cole's motion for summary judgment on August 19, 2024. (ECF No. 28.) Cole replied to Hall's response on September 3, 2024. (ECF No. 29.)

State prisoner Feddie Hall filed a complaint under 42 U.S.C. § 1983 alleging that the three Defendants – Corrections Officer (CO) Daniel Cole, Resident Unit Manager (RUM) Peggy Erickson, and Assistant Resident Unit Supervisor (ARUS) Erik Johnson – violated his Eighth and Fourteenth Amendment rights. (ECF No. 1.)

Hall says that on or about December 20, 2021, he was assigned to a segregation cell at Marquette Branch Prison (MBP). (*Id.*) Hall states that members of a "Special Threat Group" threatened his life. (*Id.*) Hall says that he warned CO Cole, RUM

Erikson, and ARUS Johnson, verbally and through kites, that he would be in "real danger" if he returned to the general population. (*Id.*) Hall states that he requested to be transferred off the general population yard to another facility. (*Id.*) Hall asserts that RUM Erikson and ARUS Johnson were both aware of the "plots" by gang members. (*Id.*) Hall alleges that the defendants "willfully disregarded" his requests for transfer and refused to provide protection. (*Id.*, PageID.3.)

Hall states that on June 10, 2022, a member of the gang, prisoner Gordon, attacked him upon his return to the general population. (*Id.*) Gordon stabbed Hall repeatedly, injuring his face and eye. (*Id.*) Hall says that during the attack, CO Cole deployed his Taser, which struck and immobilized him. (*Id.*, PageID.4.) Hall states that he was unable to protect himself and suffered permanent vision loss in his eye. (*Id.*) Hall alleges that CO Cole "violated [his] rights by refusing to act to protect the plaintiff" after deploying the Taser and preventing Hall from protecting himself. (*Id.*) Hall says that CO Cole then omitted relevant facts in writing the misconduct ticket describing the attack. (*Id.*)

CO Cole moves for summary judgment arguing that Hall failed to name him in a properly exhausted grievance. (ECF No. 23.) In the opinion of the undersigned, CO Cole has met his burden of establishing that Hall never named him in a properly exhausted grievance before he filed this suit. It is respectfully recommended that the Court grant CO Cole's motion for summary judgment and dismiss him from this case.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549

---

[1] The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, 96 F.4th 911, 923 (6th Cir. 2024), *cert. granted*, No. 23-1324, 2024 WL 4394132 (U.S. Oct. 4, 2024). In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91

4

(2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id*. at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in

5

Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days

6

after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally

7

defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325.   We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

### IV. Analysis

In his motion for summary judgment, CO Cole argues that Hall did not exhaust any of claims asserted against CO Cole in the complaint. (ECF No. 23.) CO Cole acknowledges that Grievance MBP-22-08-1106-03B was denied on the merits at Step I and Step II and concedes that the appeal was improperly rejected at Step III and thus should be considered exhausted. (ECF No. 24.) However, CO Cole argues that Grievance MBP-22-08-1106-03B was *only* properly exhausted as to Hall's claims against RUM Erikson and ARUS Johnson. (*Id.*) CO Cole asserts that because Hall failed to name him at Step I of the grievance process and the scope of the Step II appeal is limited to issues raised at Step I, Hall cannot rely on MBP-22-08-1106-03B to exhaust any claims against CO Cole. (*Id.*)

In his reply, Hall argues that Grievance MBP-22-08-1106-03B should be considered properly exhausted against CO Cole. (ECF No. 28.) Hall states that the

---

[2]  In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

8

MDOC's improper rejection of his grievance rendered the grievance process unavailable. (*Id.*) Hall asserts that the grievance's language at Step I should be understood as a grievance against MBP staff generally despite the list of specific names provided later in the Step I grievance. (*Id.*) Hall also contends that his claims against CO Cole should be considered within the scope of review at the Step II appeal because his inclusion there did not constitute the inclusion of an additional issue. (*Id.*) Hall attached grievance forms to his complaint as Attachment A. (ECF No. 1-1.)

The purpose of the grievance system is to alert prison officials to problems within their facilities. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001). The MDOC Policy Directive 03.02.130 ¶ S states that to provide adequate notice to officials, the grievant must provide facts underlying the issue being grieved including the "names of all those involved" at Step I. Issues within the scope of review at Step II and Step III appeals are limited to those issues addressed on the merits at each step of the grievance process. *See id.*; *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019). In *Reed-Bey*, the prisoner failed to identify a single individual in their initial grievance, and it would have been clear to prison officials that by addressing the merits of the grievance they would be waiving the procedural requirement to name the specific individuals involved. *See* 603 F.3d at 324; *Brown*, 2019 WL 5436159, at *3. However, where a prisoner names specific individuals at Step I of the grievance process, prison officials would naturally assume that the prisoner complied with exhaustion requirements for those named at Step I. *See id.*

9

Thus, when specific individuals are named at Step I, exhaustion is limited to the named individuals. *See id.* No safe harbor exists where a prisoner fails to name a specific individual at Step I, but chooses to include that individual later if there was no merits-based response. *Lee v. Willey*, 789 F.3d 673, 680-81 (6th Cir. 2015).

Hall states that before he filed Grievance MBP-22-08-1106-03B, he attempted to resolve his complaint. (ECF No. 1-1.) Hall says he sent a letter to the MBP Warden, but resolution was "beyond [his] control." (*Id.*, PageID.11.) The resolution attempt is shown below:

> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 7-28-22
> If none, explain why. Sent letter To Marquette Warden's Office To No Avail. Resolution Beyond My Control.

(*Id.*)

In Grievance MBP-22-08-1106-03B, Hall stated that he had been in five physical altercations with gang members or affiliates between March 4, 2021 and June 10, 2022. (*Id.*) Hall outlined a list of specific individuals stating that "[t]he following [k]new or should of knew of the danger that caused me harm in violation of the 8th Amendment of the U.S. Constitution; A.D.W Pelky, ARUS Johnson, RUM Erikson, Inspector (name unknown), And Warden Erica Huss." (*Id.*, PageID.11.) Hall stated only, "I spoke to all above name's about my safety." (*Id.*) Hall made no general statement that "MBP was aware of the danger" against him. (*Id.*; ECF No. 28, PageID.130.) Hall makes no mention of CO Cole or his claims against CO Cole in his Step I grievance. (ECF No. 1-1, PageID.11.) The content of the Step I grievance is shown in full below:

10

> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.
>
> From 3-4-21 To 6-10-22 I Had 5 Physical Altercations with known Gang Affiliates/members Before Finally Being Transfer. The Following new or should of knew of the Danger That caused Me Harm In violation of The 8th Amendment of The U.S. Constitution; A.D.W Pelky, ARUS Johnson, RUM ERICKSON, Inspector (name unknown), And Warden Erica Huss. Resolution; Staff Resposible Disciplined And Just compensation.
> I Spoke to All Above name's About my Safety.
>
> Hall 600792
> Grievant's Signature

(*Id.*)

More general language is introduced only in RUM Darrin Viitala's summary of the complaint at Step I, which states that Hall claimed "he had five altercations with known gang members at MBP prior to being transferred. MBP was aware of the danger that cause him." (*Id.*, PageID.13.) The Complaint Summary is shown below:

> **COMPLAINT SUMMARY:**
> Prisoner is claiming he had five altercations with known gang members at MBP prior to being transferred. MBP was aware of the danger that caused him.

(*Id.*)

A summary of the investigation of the grievance at this stage makes no mention of CO Cole. (*Id.*) RUM Viitala notes that they "spoke with RUM Erikson she stated, that prior to any prisoner being released from segregation they were asked if they would like to return to general population. Prisoner Hall was given an opportunity at each SCC to bring up any and all concerns he may have. At no time did prisoner Hall state he was in danger or needed protection from other prisoners or staff." (*Id.*, PageID.13.) RUM Viitala concludes his review of the Step I grievance

11

stating, "[a]t no time were any protection concerns brought to the attention of MBP staff." (*Id.*) CO Cole is not mentioned by Viitala in either his Investigation of Decision Summaries at Step I. (*Id.*) The Investigation and Decision Summaries are shown below:

> **INVESTIGATION SUMMARY:**
> Prisoner's claims have been reviewed. I reviewed applicable policy and procedure. I spoke with RUM Erickson she stated, that prior to any prisoner being released from segregation they are asked if would like to return to general population. Prisoner Hall was given an opportunity at each SCC to bring up any and all concerns he may have. At no time did prisoner Hall state he was in danger or needed protection from other prisoners or staff.

(*Id.*)

> **DECISION SUMMARY:**
> Prisoner Hall was classified to segergation per policy and procedure. He was also reduced from segregation per policy and procedure. At no time were any protecion concerns brought to the attention of MBP staff. I find no violation of policy or procedure. Grievance is denied at this step

(*Id.*)

Hall appealed Viitala's decision at Step I, filing a Step II appeal on September 12, 2022. (*Id.*, PageID.12.) At Step II, Hall introduced CO Cole and the allegation that CO Cole failed to protect him following the use of his Taser for the first time. (*Id.*) Hall asserted that "C/O D. Cole immobilized me w/ his taser devise which allowed my attacker to stab me in my eye & cause vision loss from STG Gang affiliates/members." (*Id.*) In the September 20, 2022 response to the Step II appeal, Warden Sarah Schroeder stated "[a]t no time during any of your segregation stays and or prior to release to general population did you relay to staff that you were in danger from any gang and need protection." (*Id.*, PageID.14.)

Warden Schroeder noted that newly introduced issues were outside of the scope of review at the Step II appeal, stating "additional issues will not be addressed during the Step II appeal in accordance with PD-03.02.130." (*Id.*) Warden Schroeder

12

concluded "[t]his grievance appeal is denied." (*Id.*)  The Step II appeal and response are shown below:

> **STEP II – Reason for Appeal** While AT MBP C/O D.COLE IMMOBILIZED ME W/HIS TASER DEVICE which ALLOWED my attacker TO STAB ME in my EYE & CAUSE VISION LOSS from 5-4-21 TO 6-10-22 DaTE of attack, I Had 5 Physical AlterCations W/WELL KNOWN STG Gang Affiliates/members Before finally Being Transfered. I SPOKE TO R[]m Erickson & Arus Johnson multiply TIME, THEY KNEW OF THE DanGER tHat Caused ME ViSion loss & 18 days in the Hospital in Violation OF tHE 8th Amendment OF THE US Constitution CruEL & unusual Punishment & Failure To Protect. Step1 ReCeIVED oN 9-13-22

(*Id.*, PageID.12.)

> **STEP II – Response:**
>
> A review of your Step II appeal has been completed. I have also reviewed your Step I grievance and the response. Your issues regarding conditions protection/safety have been appropriately addressed in the Step I response. No information has been presented or found that would support your claim that staff violated department policy. You claim to have had five altercations with known gang members prior to MBP transferring you. The last being a fighting in G-unit on 6-10-2022 where your eye was damaged. When classified to segregation and prior to returning to general population the MBP Security Classification Committee meets with you to discuss your placement and any concerns regarding your safety you may have. At no time during any of your segregation stays and or prior to release to general population did you relay to staff that you were in danger from any gang and needed protection. At no time did you state you could not lock in general population due to ongoing safety concerns. Any additional issues will not be addressed during the Step II appeal in accordance with PD-03.02.130 Prisoner Parolee Grievances. This grievance appeal is denied.

(*Id.*, PageID.14.)

The record reflects that at Step I, Hall put a specific list of named individuals on notice of the claims against them. (ECF No. 1-1, PageID.11.)  CO Cole was not among that specific list of individuals. (*Id.*)  Allegations concerning CO Cole's failure to protect following the use of his Taser were not included at Step I. (*Id.*)  Issues involving CO Cole were not addressed in Viitala's Step I decision. (*Id.*, PageID.13.)  At Step II, Hall introduced claims against CO Cole for the first time. (*Id.*, PageID.12.)  Warden Schroeder's response at Step II did not address Hall's claims against CO Cole on the merits, noting that they were "additional issues" outside the scope of review

13

at that stage. (*Id.*, PageID.14.)  No mention of CO Cole or the claims against him appear to have been made in the Step III appeal. (*Id.*, PageID.12.)  No mention of CO Cole or the claims against him are made in the rejection of the Step III appeal. (*Id.*, PageID.15.)

Hall maintains that he properly exhausted his claims against CO Cole through Grievance MBP-22-08-1106-03B. (ECF No. 28.)  While CO Cole is mentioned in the Step II appeal of that grievance, the claims mentioned in the Step II appeal and the claims against CO Cole in the plaintiff's complaint are fundamentally different in nature from those listed in the Step I grievance and those listed in the complaint against RUM Erikson and ARUS Johnson. (ECF No. 1; ECF No. 1-1.)  In his Step I grievance and the complaint, Hall alleges that RUM Erikson and ARUS Johnson failed to protect him from the danger posed by a transfer from segregation to the general population. (ECF No. 1, PageID.3; ECF No. 1-1, PageID.11.)  In his Step II appeal and in his complaint, Hall alleges that CO Cole failed to protect him only after CO Cole tased and immobilized him. (ECF No. 1, PageID.4; ECF No. 1-1, PageID.12.)  The Court finds the two sets of claims to be distinct.

In the opinion of the undersigned, CO Cole has met his burden of showing that Hall failed to properly exhaust his claims against him, entitling CO Cole to summary judgment.

### V. Recommendation

The undersigned respectfully recommends that this Court grant Defendant CO Cole's motion for summary judgment.

If the Court accepts this recommendation the following Eighth and Fourteenth claims against Defendants remain:

1. **RUM Erickson:** failure to protect from risk of harm;

2. **ARUS Johnson:** failure to protect from risk of harm.


Dated:   October 25, 2024                         /s/ *Maarten Vermaat*
                                                  MAARTEN VERMAAT
                                                  U. S. MAGISTRATE JUDGE


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).